**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

**SLP**

|  |  |
|---|---|
| MARQUISE MILLER, ) <br> ) <br> *Plaintiff* ) <br> ) <br> vs. ) <br> ) <br> UNITED STATES DEPARTMENT OF ) <br> AGRICULTURE; OKLAHOMA STATE ) <br> DEPARTMENT OF EDUCATION; ) <br> OKLAHOMA CHILD AND ADULT CARE ) <br> FOOD PROGRAM (CACFP); KASSANDRA ) <br> REDELL; and JENNIFER WEBER, ) <br> ) <br> *Defendants.* ) | Case No. **CIV 21  850** <br><br> COMPLAINT, DEMAND FOR <br> JURY TRIAL <br><br> **FILED** <br><br> AUG 27 2021 <br><br> **CARMELITA REEDER SHINN, CLERK** <br> **U.S. DIST. COURT, WESTERN DIST. OKLA.** <br> BY_____,DEPUTY |

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**

1.     Plaintiff, MARQUISE MILLER, hereby files the following complaint against Defendants as captioned above.

**JURISDICITON AND VENUE**

2.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

3.     This is also an action to redress the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since all defendants reside or resided in this district and the events giving rise to the claims occurred in this district.

5.     Plaintiff has met all the administrative requirements of the Oklahoma Governmental Tort Claims Act, 51 O.S. §151 et seq. and timely files this Complaint.

6. Plaintiff is essentially asking the court to declare the nature of the prospective relationship between the plaintiff and the government agency involved. In such a case, jurisdiction may remain with the District Court. See Burkins v. United States, 112 F.3d 444, 449 (10th Cir. 1997); see also Southeast Kansas Community Action Program Inc. v. Secretary of Agriculture of U.S., 967 F.2d 1452 (10th Cir. 1992); Hamilton Stores, Inc. v. Hodel, 925 F.2d 1272, 1279 (10th Cir. 1991) (jurisdiction over federal defendant proper under both § 1346 and § 1331 where plaintiff sought to require National Park Service to offer plaintiff the opportunity to provide the new and additional accommodations in accordance with plaintiff's preferential contractual right, but did not request payment of compensatory damages).

## PARTIES

7. Plaintiff is a resident of Edmond City, Oklahoma. His address of service is 1505 NW 179th Terr, Edmond, OK., 73012, and thus is a resident of the Western District of Oklahoma.

8. Plaintiff is informed and believes and thereupon alleges that the Defendant United States Department of Agriculture ("USDA") is the federal executive department responsible for developing and executing federal laws related to farming, forestry, rural economic development, and food. USDA provides funding and administers Oklahoma Child and Adult Care Food Program. Address for service: 1400 Independence Ave., S.W., Washington, DC 20250.

9. Plaintiff is informed and believes and thereupon alleges that the Defendant Oklahoma State Department of Education ("OSDE") is the state education agency of the State of Oklahoma. OSDE administers Oklahoma Child and Adult Care Food Program. Address for service: 2500 North Lincoln Boulevard, Oklahoma City, Oklahoma 73105.

10. Defendant Oklahoma Child and Adult Care Food Program (CACFP) is a State agency. It provides reimbursement for well-balanced, nutritious meals served to individuals enrolled in day care centers. It obtains funding from the United States Department of

Agriculture (USDA) through the Oklahoma State Department of Education. Its address of service is 2500 North Lincoln Boulevard, Suite 310, Oklahoma City, Oklahoma 73105-4599.

11.     Plaintiff is informed and believes and thereupon alleges that Defendant Kassandra Redell (hereafter referred to as "Redell") is, and at all times mentioned in this Complaint was, individual residing in the Oklahoma City, in the State of Oklahoma. Defendant Kassandra Redell is/was an employee of the Oklahoma Child and Adult Care Food Program. Plaintiff is not aware about the address of Kassandra Redell.

12.     Plaintiff is informed and believes and thereupon alleges that Defendant Jennifer Weber (hereafter referred to as "Weber") is, and at all times mentioned in this Complaint was, individual residing in the Oklahoma City, in the State of Oklahoma. Defendant Jennifer Weber is/was an employee of the Oklahoma Child and Adult Care Food Program. Plaintiff is not aware about the address of Kassandra Redell.

## FACTS

13.     Plaintiff is an African American male serving as Senior Pastor at Reachout Ministries. He oversees Wonderfully Made Learning Centre, a daycare located at 908 N.E. 30th Oklahoma City, OK 73105. (Hereinafter referred to as "the daycare").

14.     The daycare was involved in the Child Nutrition Reimbursement Program from Defendants because some of the clients served thereat were either low income or homeless.

15.     CACFP provides reimbursement for well-balanced, nutritious meals served to individuals enrolled in day care centers, Family Day Care Homes, after school programs, emergency shelters, and/or head start programs. Funding is provided to the Oklahoma State Department of Education (state agency) from the United States Department of Agriculture based on claims submitted by program participants.

16.     Upon information and belief, USDA contracts with the Oklahoma State Department of Education to administer the Oklahoma Child and Adult Care Food Program. OSDE - CACFP in turn contracts with participants like Wonderfully Made Learning Center.

17.     USDA, OSDE and CACFP are responsible for implementing policies, procedures and standards for the program. These defendants also responsible to properly train and supervise their officers with respect to proper procedures in the investigation and inspection of daycare.

18. USDA failed to require OSDE to promulgate rules to implement the CACFP.

19. OSDE unlawfully disregarded the Administrative Procedure Act by allowing CACFP to operate.

20. The CACFP was operating without promulgated rules when they terminated this agreement with Mr. Miller.

21. The CACFP is currently operating without promulgated rules.

22.     The Plaintiff's daycare has been receiving reimbursement from Defendants for at least 10 years until Defendants unlawfully terminated the agreement.

23. Defendants placed Marquise Miller on the National Disqualified List.

24. Mr. Miller was placed on the National Disqualified List without any due process.

25. Mr. Miller was placed on the National Disqualified List due to events that allegedly occurred in connection with Wonderfully Made Learning Center.

26.     On or about September 3, 2020, Plaintiff had a positive COVID test result confirmed.

27.     Other staff of the daycare also tested positive for COVID as well.

28.     On or about August 31, 2020, Defendants allege that they conducted a review of the daycare.

29.     However, on or about August 31st 2020, key staff were not present due to justifiable medical precautions.

30.     Notably, Defendant Jennifer Weber wrote Plaintiff stating, "The Child Nutrition Office has been trying to reach you regarding the review that was attempted on Monday, August 31, 2020."

31.     Jennifer Weber communicated that a review was attempted.

32.     Jennifer Weber communicated that the review was never signed by a center representative.

33.     Jennifer Weber was made aware that key staff had contracted Covid-19 during timeframe of attempted review was alleged to take place.

34. Jennifer Weber communicated that Mr. Miller never responded to the only email she sent on September 3, 2020.  Mr. Miller responds to this email on September 6, 2020.

35.     Kassandra Redell apologized for leaving appeal documents out of paperwork sent to Plaintiff.

36.     Mr. Miller asked, why important documents were not sent via email prior to termination of agreement.

37.     Kassandra Redell responds "- per USDA, it is required that all letters concerning Serious Deficiencies and Proposed terminations are sent certified postal mail. "

38.     The USDA **does not require that all letters** concerning Serious Deficiencies and proposed terminations be sent certified postal mail.

39.     The USDA **does allow** letters to be sent concerning Serious Deficiencies and Proposed Terminations through email.

40.     Defendants intentionally and maliciously attempted to withhold documents from Plaintiff.

41.     Defendants never took any steps to ensure that Plaintiff indeed received any documents they sent him.

42.     Notably, "it is best practice to get proof of the delivery of the notice." *See* **page 15 of Serious Deficiency, Suspension, & Appeals for State Agencies & Sponsoring Organizations A Child and Adult Care Food Program Handbook).**

43.     Defendants alleged that an alleged 2016 deficiency gave them the right to terminate Defendant's reimbursement agreement.

44.     This Court cannot authenticate records past 3 years ago. See 7 C.F.R. § 226.6(10)(d).

45.     Defendants acknowledge that when too much time has passed, that a New Notice of Serious Deficiency should be issued.

46.     Other participants in the CACFP program, in the same or similar situation as Mr. Miller's center, were given a New Notice of Serious Deficiency after 3 years had passed since their last alleged Serious Deficiency.

47.     Upon information and belief, USDA helped OSDE and CACFP evaluate daycare's performance, agreed with the state defendants to terminate the daycare after the program review, and ultimately approved the daycare's termination.

48.     CACFP denied any liability and/or violation of Plaintiff's civil rights.

**COUNT I**
**Violation of 42 U.S.C. § 1983**
**(Against all Defendants)**

49.     Plaintiff incorporates by reference herein all allegations set forth above.

50.     Defendants violated Plaintiff's rights without employing fair procedures to reach their decision(s).

51.     It would be impossible and unjust for Defendants to complete a review of the daycare on a day when key staff of the daycare were absent because they displayed COVID symptoms, which were later confirmed by positive results.

52.    Defendants claim to have completed a review of the daycare on or about August 31, 2020.

53.    Defendants cannot prove that review took place on August 31, 2020.

54.    Defendants attempts to take away crucial welfare benefits from Plaintiff without giving him a chance to appeal.

55.    This action not only violates Plaintiff's due process rights, it also predisposes the innocent beneficiaries in the daycare to lack of proper nutrition.

56.    Defendants have no evidence that the daycare had the same deficiencies it had in 2016.

57.    Defendants have not provided the written details of alleged deficiencies in 2020.

58.    Defendants have not provided any evidence of the 2020 alleged deficiencies.

59.    The alleged 2016 deficiencies were time bound by the statutory limit of three years.

60.    Defendants violated Plaintiff's due process rights violating  42 U.S.C. § 1983.

## COUNT II
### Violation of 7 C.F.R. § 226.6(c) and 7 C.F.R. § 226.6(k)(9)
**(Against all Defendants)**

61.    Plaintiff incorporates by reference herein all allegations set forth above.

62.    Defendants denied Plaintiff his right to come to compliance if they indeed found Plaintiff liable per their alleged review.

63.    Defendants also failed to inform Plaintiff of his right and procedure to appeal Defendants' decision.

64.    Defendants never informed Plaintiff of any proposals of termination of the agreement. Notably, Plaintiff has been in communication with Defendants via email. Email communication is recognized as one means of communicating with the Defendants. *See* **page**

15 of Serious Deficiency, Suspension, & Appeals for State Agencies & Sponsoring Organizations A Child and Adult Care Food Program Handbook).

65.     In response to Plaintiff's letter on or about October 30, 2020, Defendant Kassandra promised to send Plaintiff a copy of the appeal procedure/process.

66.     However, Kassandra Redell delayed sending the appeal procedures.

67.     Defendants sent appeal documents after agreement was terminated.

68.     Defendants then communicate with Mr. Miller that it was nothing he can do.

69.     Defendants did this to maliciously and intentionally to terminate agreement.

**COUNT III**
**Violation of 15 U.S. Code § 1692g(a)(3).**
**(Against all Defendants)**

70.     Plaintiff incorporates by reference herein all allegations set forth above.

71.     Defendants had an obligation to give Plaintiff a thirty-day window to dispute the validity of the debt.

72.     Defendants failed to give Plaintiff the required **thirty days** before taking any further action.

73.     Also, Defendants cannot claim that Plaintiff admitted liability by failing to make any dispute. Per 15 U.S. Code § 1692g(c), "The failure of a consumer to dispute the validity of a debt … may not be construed by any court as an admission of liability by the consumer."

74.     It follows; Defendants are liable for failing to provide Plaintiff the thirty days window to make a dispute regarding the debt.

75.     Accordingly, Plaintiff is entitled to judgment in his favor.

**COUNT IV**
**Negligence**
**(Against All Defendants)**

76.     Plaintiff incorporates by reference herein all allegations set forth above.

77.     Defendants had a duty to Plaintiff to act with ordinary care and prudence so as not to cause harm or injury to another.

78.     By engaging in the acts alleged herein, Defendants failed to act with ordinary care and breached their duty of care owed to Plaintiff.

79.     Defendants failed to act with ordinary care in failing to properly train and supervise their officers with respect to proper procedures in the investigation and inspection of the daycare.

80.     Defendants Jennifer Weber and Kassandra Redell acted outside of their scope of employment and violated Mr. Miller's Constitutional Rights.

81.     As a direct, proximate and foreseeable result of Defendants' breach of their duty of care, Plaintiff suffered damages in an amount according to proof at the time of trial.

### COUNT V
### Civil Rights Action (42 U.S.C. § 1983)
### For Failure to Properly Screen and Hire
### (Against USDA, OSDE and CACFP)

82.     Plaintiff incorporates by reference herein all allegations set forth above.

83.     Defendants, their agents, servants and employees failed to adequately and properly screen and hire the defendant employees.

84.     The failure of these Defendants to properly screen and hire the defendant agents and officers as a matter of policy, custom and practice, in the exercise of their functions, was deliberately indifferent to the constitutional rights of Plaintiff and done with conscious disregard for the dangers of harm and injury to Plaintiff and others similarly situated.

85.     Due to the acts of Defendants, the failure to properly screen and hire agents and officers and the continued employment of the defendant agents and officers present a clear and present danger to the citizens of the United States.

86.     The lack of adequate screening and hiring practices by Defendants evince deliberate indifference to the rights of Plaintiff and others in their position.

87.     These hiring practices led to the employment of Defendants caused the harms suffered by Plaintiff in this case.

88.     As a result of Defendants' actions, Plaintiff suffered physical and psychological injuries.

**COUNT VI**
**Civil Rights Action (42 U.S.C. § 1983)**
**For Failure to Properly Train Against Defendants**
**(Against USDA, OSDE and CACFP)**

89.     Plaintiff incorporates by reference herein all allegations set forth above.

90.     Defendants, as a matter of custom, practice and policy, failed to maintain adequate and proper training as to the constitutional rights of citizens; and to prevent extra judicial punishment by officers.

91.     Defendants failed to provide adequate training to officers on the proper protocol and procedure on the investigation.

92.     Therefore, these Defendants, with deliberate indifference, disregarded a duty to protect the public from official misconduct.

93.     The failure to promulgate or maintain constitutionally adequate training was done with deliberate indifference to the rights of Plaintiff and others in their position.

94.     The constitutionally infirm lack of adequate training as to the officers in this case caused Plaintiff's damages.

95.     As a result of Defendants' actions, Plaintiff suffered physical and psychological injuries.

**COUNT VII**
**Civil Rights Action (42 U.S.C. § 1983)**
**For Failure to Supervise and Discipline**
**(Against USDA, OSDE and CACFP)**

96.     Plaintiff repeats and re-allege all of the previous allegations of the entirety of this Complaint with the same force and effect, as if fully set forth herein again at length.

97.    Defendants failed to supervise their agents and officers to prevent, malicious inspections of the daycare.

98.    Upon information and belief, Defendants knew or should have known of unlawful inspections of their employees but took no steps to supervise them, correct their abuse of authority, or discourage their unlawful use of authority.

99.    To the contrary, Defendants condoned and acquiesced in the abusive behavior of agents and officers by refusing to retrain them, discipline them, or correct their behavior.

100.    Defendants were or should have been aware that the policy regarding supervision and discipline of officers who violated the civil rights of the citizens was so inadequate that it was obvious that a failure to correct it would result in further incidents of lawless conduct perpetrated by their officers.

101.    The constitutionally deficient investigation and lack of discipline was done with deliberate indifference to the rights of Plaintiff and others in their position. The lack of adequate supervision and discipline caused Plaintiff's damages.

## DEMAND FOR JURY TRIAL

102.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff demands trial by jury in this action of all issues so triable.

## REQUEST FOR RELIEF

Plaintiff incorporates each of the allegations in the paragraphs above and prays as follows:

(a)    For a temporary restraining order, preliminary and permanent injunction, enjoining and restraining Defendants from engaging in the policies, practices and conduct complained of herein;

(b)    For a declaratory judgment that Defendants' policies, practices and conduct as alleged herein violate Plaintiff's rights under the United States constitution and

the Federal law;

(c)     Preliminarily and permanently enjoining enforcement by Defendant as discussed above;

(d)     For damages retroactive and otherwise in an amount to be determined according to proof.

(e)     For costs of suit and attorney fees as provided by law;

(f)     Granting such other and further relief as the Court deems just and proper.

(g)     The declaratory and injunctive relief requested in this action is sought against each Defendant; against each Defendant's officers, employees, and agents; and against all persons acting in active concert or participation with any Defendant, or under any Defendant's supervision, direction, or control.

Dated: August 27, 2021                                    Respectfully submitted,

                                                          MARQUISE MILLER, Pro se
                                                          1505 NW 179th Terr
                                                          Edmond, OK., 73012